IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELIX M. OKOR,             ) | |
|                            ) | |
|     Plaintiff,        ) | |
|                            ) | No. 17 C 4984 |
| v.                         ) | |
|                            ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security, ) | |
|                            ) | |
|     Defendant.        ) | |
|                            ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Felix M. Okor's claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 16] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

On February 25, 2015, Plaintiff filed a claim for DIB, alleging disability since June 1, 2012. (R. 158–70.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 29, 2016. (R. 23–51.) Plaintiff

personally appeared and testified at the hearing and was represented by counsel. Vocational expert Thomas A. Gusloff also testified. (*Id.*)

On February 16, 2017, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. (R. 27–50.) The ALJ then proceeded through the five-step sequential evaluation process required by the Social Security Regulations. See 20 C.F.R. § 404.1520 and 416.902(a). After noting that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2017, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date. (R. 12.)

At step two, the ALJ determined that Plaintiff had the severe impairments of osteoarthritis of the bilateral knees and obesity. (*Id.*) The ALJ also found that Plaintiff had the non-severe impairments of hypertension, history of prostate cancer, gastroesophageal reflux disease, and lung infiltration, and that Plaintiff's diagnoses of carpal tunnel syndrome and posttraumatic stress disorder ("PTSD") were not medically determinable impairments. (R. 12-13.) The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment, namely listing 1.02 (major dysfunction of a joint). (R. 33.) *See* C.F.R. Part 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: the option of standing for five

2

minutes for every forty-five minutes sitting, and sitting for five minutes after every forty-five minutes standing or walking; never climbing ramps, stairs, ladders, ropes, and scaffolds; only occasionally kneeling, crouching, or crawling; and only occasionally being exposed to extreme cold or vibration. (R. 13.) At step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a Job Coach and Director of Social Services, Administrative Clerk, or Director of Educational Programs and thus was not disabled. (R. 16-17.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former

3

occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the

ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

5

### III. ANALYSIS

Plaintiff argues that the ALJ's decision is erroneous for five reasons: (1) the ALJ failed to use the "special technique" in analyzing the severity of Plaintiff's PTSD; (2) his evaluation of the medical opinions was flawed; (3) he did not follow the treating physician rule; (4) substantial evidence did not support the sit/stand option given in the RFC; and (5) the ALJ erred in evaluating Plaintiff's subjective allegations of pain.

#### A. "Special Technique"

The ALJ noted that Plaintiff was diagnosed with PTSD by his primary care provider, Dr. Aaron Lazar, M.D., but found that the PTSD was not a medically determinable impairment and not severe. Plaintiff argues that by concluding that the PTSD is not severe, the ALJ impliedly found the PTSD to be a medically determinable impairment, and thus he was required to employ the "special technique" or evaluating mental impairments. 20 C.F.R. § 404.1520a. The special technique "is used to analyze whether a claimant has a medically determinable mental impairment and whether the impairment causes functional limitations." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). If the ALJ finds that the claimant has a medically determinable mental impairment, he must document that finding and rate the degree of limitation in four broad functional areas in assessing mental

impairments at step two and in conjunction with the RFC.[1] 20 C.F.R. § 404.1520a(d)(3); *see* 20 C.F.R. § 404.1520a(e)(4) (noting that the decision must include "a specific finding as to the degree of limitation in each of the functional areas").

The Commissioner concedes that the ALJ did not explicitly go through the four areas of functional limitation, arguing that the omission was harmless error. *See Craft*, 539 F.3d at 675 (citing *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (holding that under some circumstances, "the failure to explicitly use the special technique may indeed by harmless error"). The Court agrees with the Commissioner.

While the ALJ did not expressly lay out the four functional limitation areas in his analysis of Plaintiff's PTSD, he "provided enough information to support the 'not severe' finding." *Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013). Under step two, the ALJ noted that Plaintiff was diagnosed with PTSD at an individual appointment with his primary care provider, but the diagnosis was not retained in Plaintiff's medical history or even in the primary care provider's notes. Moreover, Plaintiff never had any treatment for the PTSD and stated that he felt better after he quit working seventy hours a week.

---

[1] Effective January 17, 2017, the SSA changed the four areas of functioning from activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation to understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. 20 C.F.R. § 404.1520a(c)(3). Plaintiff acknowledges this change in a footnote, but incorrectly states that this does not apply to the ALJ's decision, which was issued in February 2017. However, Plaintiff's argument hinges on whether the ALJ should have used the special technique at all, and thus the correct areas of functioning are not determinative.

The ALJ further explained that Plaintiff's claim of severe PTSD was not consistent with his ability to do laundry, dishes, ironing, and weekly shopping; to complete personal care; to help his daughter with homework; and to run a not-for-profit organization. The ALJ also pointed out that Plaintiff sought no treatment for memory issues and only complained about his difficulties in focusing and concentrating at a single doctor's visit. Moreover, the ALJ gave great weight to the state agency consultants, both of whom found that Plaintiff had no medically determinable mental impairment whatsoever. Substantial evidence thus supports the ALJ's conclusion that Plaintiff's PTSD was non-severe. While "[t]he ALJ's application of the special technique is not a model for compliance … we will not remand a case for further specification when we are convinced that the ALJ will reach the same result." *Id.* at 367 (citing *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011).

## B. <u>Medical Opinions</u>

### 1. *State Agency Medical Consultants and Consultative Examiner*

Plaintiff next argues that the ALJ was inconsistently weighed the opinions of the state agency medical consultants and the consultative examiner. The state agency consultants opined that Claimant had the capacity to perform light work with limitations, but the consultative examiner, Dr. Seth Osafo, M.D., concluded that Plaintiff was "able to sit, stand, walk, carry, handle objects, hear and speak without limitations." (R. 16, 410.) The ALJ assigned partial weight to the state consultants' opinions and great weight to Dr. Osafo's opinion.

8

Plaintiff disputes the ALJ's seemingly inconsistent choice to incorporate into the RFC limitations like those recommended by the agency consultants, while only partially crediting their opinions. But Plaintiff does not allege that the ALJ failed to incorporate limitations suggested by Dr. Osafo, whose opinion was given great weight. To the contrary, Plaintiff takes issue with the fact that the ALJ's RFC included *more* limitations than those in Dr. Osafo's opinion.

The ALJ gave partial weight to the state consultants, who limited Plaintiff to light work with the limitations of never climbing ramps or stairs, occasionally climbing ladders, ropes, and scaffolds. After finding that additional limitations were warranted in light of subsequent evidence, the ALJ added the limitations of never climbing ladders ropes, and scaffolds, only occasionally kneeling, crouching, or crawling, and only occasionally being exposed to extreme cold or vibration, along with a sit/stand option. The ALJ "has final responsibility for determining a claimant's RFC and need not adopt any one doctor's opinion." *Retzloff v. Colvin*, 673 Fed. App'x 561, 568 (7th Cir. 2016) (unpublished decision). An ALJ "may accept certain portions of an opinion while rejecting others." *Coulter v. Colvin*, No. 15 C 1974, 2016 WL 6524910, at *7 (N.D. Ill. Nov. 3, 2016). The Court concludes that the ALJ's decision to include additional limitations was supported by substantial evidence, and if it were in error, it worked to Plaintiff's benefit and thus was harmless. *See Brandenburg v. Colvin*, No. 14-CV-835, 2015 WL 4755740, at *12 (E.D. Wis. Aug. 11, 2015) ("An RFC that includes additional limitations beyond

9

what the evidence supports cannot harm the claimant, since any increase in limitations decreases the number of jobs a claimant can perform.").

### 2. *Treating Physician Rule*

Dr. Aaron Lazar began treating Plaintiff in 2005 and saw him at least every six months since that time. Dr. Lazar completed an impairment questionnaire in March 2015. He opined that Plaintiff could not sit continuously for an eight-hour work day and must stand or walk around for five to ten minutes periodically. Plaintiff could frequently lift and carry up to five pounds but could never lift or carry anything heavier. Plaintiff would experience further degeneration his knees and elevated blood pressure if he were placed in a competitive working environment; his symptoms would be severe enough to interfere with attention and concentration frequently; Plaintiff would need to take ten- to fifteen-minute unscheduled breaks every two hours; and he would likely be absent from work two to three times per month. Dr. Lazar also stated that emotional factors would not contribute to the severity of Plaintiff's symptoms and functional limitations.

In September of 2015, Dr. Lazar wrote a letter asserting that Plaintiff's knee conditions had worsened, that "[h]is stress related conditions have been treated with in-office counseling and developing coping strategies," and that Plaintiff's conditions were not likely to resolve in the next twelve months. (R. 442.) The ALJ gave Dr. Lazar's opinion little weight, finding it inconsistent with the doctor's own treatment records, the record as a whole, and Plaintiff's testimony.

10

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 229, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*; 20 C.F.R. § 404.1527. "[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ "may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation marks and citation omitted).

Plaintiff contends that the ALJ failed to adequately discuss the necessary factors, specifically Dr. Lazar's extensive treating relationship with Plaintiff and how Dr. Lazar's opinions were inconsistent with the treatment notes. Although the ALJ did not address every factor set forth in 20 C.F.R. § 404.1527, the Seventh

11

Circuit has held that The ALJ need not do so when the "decision makes clear that he was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 Fed. App'x 951, 959 (7th Cir. 2013) (unpublished decision). Here, although the ALJ did not explicitly mention that Dr. Lazar treated Plaintiff for over ten years, he discussed the consistency of the opinion, the supportability of the opinion, the fact that Dr. Lazar was Plaintiff's primary care physician, and the types of treatment offered by Dr. Lazar. The Seventh Circuit has held that this is enough to provide a sound explanation for the rejection of a treating physician's opinions. *Id.* ("While the ALJ did not explicitly weigh each factor . . . his decision makes clear that he was aware of and considered many of the factors, including [the treating physician's] treatment relationship with [plaintiff], the consistency of her opinion with the record as a whole, and the supportability of her opinion.")

Next, substantial evidence supported the ALJ's conclusion that Dr. Lazar's severely restrictive opinion was inconsistent with Plaintiff's activities. While the Seventh Circuit has criticized equating activities of daily living with the ability to engage in gainful employment, *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015), the ALJ did not do so here. Rather, the ALJ found that Plaintiff's activities of daily living indicate that Plaintiff has greater functional abilities than either he or Dr. Lazar claims. For example, Dr. Lazar stated that Plaintiff was significantly limited in his ability to sit, stand, and walk, yet Plaintiff acknowledges he could shop for up to two hours on a weekly basis; regularly does laundry, dishes, and ironing; and he ran a non-profit school, working an average of seventy hours per week, in October

2013, more than a year after his alleged onset date. The ALJ did not impermissibly equate Plaintiff's activities of daily living with an ability to sustain full-time work. *See Roddy v. Astrue,* 705 F.3d 631, 639 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Therefore, the Court finds that the ALJ has built a logical bridge and satisfied his burden of "minimally articulat[ing] his reasons" for giving Dr. Lazar's opinions little weight. *Schreiber,* 619 Fed. App'x at 958; *Gully v. Colvin,* 593 Fed. App'x 558, 564 (7th Cir. 2014) (unpublished decision) ("[T]he ALJ need only 'minimally articulate his reasoning for the weight assigned to a physician's opinion.").

## C. <u>Residual Functional Capacity</u>

Plaintiff next complains that the ALJ failed to explain the basis for including in the RFC an option to sit/stand every forty-five minutes, given that this option was not recommended by any experts or treaters in the record. The state agency doctors found no need for any sit/stand accommodation, and treating physician Dr. Lazar recommended a much more restrictive option of standing for five to ten minutes after sitting for twenty minutes, as well as taking an additional ten to fifteen minute breaks every two hours.

The ALJ has the responsibility for determining a claimant's RFC, and he is not required to adopt the precise limitations of any one doctor's opinion. *Retzloff*, 673 Fed. App'x at 568. The ALJ is required to create an RFC supported by substantial evidence, but that standard is one of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Elder*, 529 F.3d

13

at 413. As previously discussed, substantial evidence supported the ALJ's decision not to give controlling weight to Dr. Lazar's opinion and assign more weight to the opinions of the state agency physicians. Therefore, the ALJ's lack of discussion regarding the reasons he adopted the particular sit/stand option is harmless error, as it is even more limiting than the restrictions recommended by the agency physicians. *See Brandenburg*, 2015 WL 4755740, at *12.

### D.   Subjective Complaints

Finally, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of pain, with respect to whether they were consistent with the record. An ALJ must "explain the inconsistencies between [a claimant's] activities of daily living, complaints of pain, and the medical evidence." *Zurawski v. Halter*, 245 F.3d at 887. Here, the ALJ acknowledged Plaintiff complained of difficulty with lifting, lifting, bending, standing, walking, kneeling, climbing stairs, completing tasks and concentrating but concluded that his allegedly disabling limitations were not consistent with Plaintiff's activities of daily living, including doing laundry, washing dishes, and shopping for up to two hours weekly; working a seventy-hour week running a non-profit, which included lifting an average of twenty pounds and frequently moving around; as well as the treating physician's notes. The ALJ's discussion of these inconsistencies was is not "patently wrong," and therefore the Court will not disturb it. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 16] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 25] is granted.

**SO ORDERED.**   **ENTERED:**

*Maria Valdez*

**DATE:   November 28, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**